

**From:** Robinson, Tom
**Sent:** Thursday, January 15, 2009 4:34 PM
**To:** Saf, John
**Cc:** Kaback, Deborah
**Subject:** RE: Developing Situation with Significant Potential Exposure to Oppenheimer

I have asked Deborah Kaback, one of our attnys, to look into this matter and to be in touch with you as she develops useful information. Tom

---

**From:** Saf, John
**Sent:** Wednesday, January 14, 2009 12:07 PM
**To:** Robinson, Tom; Galati, Dianne
**Cc:** Dierckman, Leo; Richman, Michael D; Saf, John
**Subject:** Developing Situation with Significant Potential Exposure to Oppenheimer

Tom,

**I first want to impress on you the obvious need for discretion in handing this matter. I do not want to burn any bridges or harm our relationship with any of the FAs.**

I have been working with Allen Reichman on his acquisition of a couple new insurance accounts totaling approximately $80 million in fixed income assets. An acquaintance of Allen's is the owner of a New York bank and is in the process of purchasing a small family of insurance companies. It is the purchaser's intent to custody the assets at Oppenheimer, borrow $30 million against the value of the account on margin, and use the funds to pay the purchase price.

During our phone conference this morning, I told Allen that I believed that it is illegal under the State Of Oklahoma Insurance Statutes (or any other state's for that matter) to borrow on margin against assets of the company to pay the purchase price because payment of these funds would cause the company to become technically insolvent unless the amount borrowed is significantly less than the amount of surplus (equity) in the company.

This section of the Code might allow Oppenheimer Trust to act as custodian -

http://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=86642

"Custodian" shall mean a national bank, state bank, or trust company which has at all times aggregate capital, surplus, and undivided profits of not less than Five Hundred Thousand Dollars ($500,000.00) and which is regulated by either state banking laws or is a member of the Federal Reserve System and which is legally qualified to accept custody of securities in accordance with the standards set forth below, or a broker-dealer as defined by Section 1-102 of Title 71 of the Oklahoma Statutes that is registered with and subject to the jurisdiction of the Securities and Exchange Commission, maintains membership in the Securities Investor Protection Corporation, and has a tangible net worth equal to or greater than Two Hundred Fifty Million Dollars ($250,000,000.00), except that with respect to securities issued by institutions organized or existing under the laws of any foreign country, or securities used to meet the deposit requirements pursuant to the laws of a foreign country as a condition of doing business therein, "custodian" may include a bank, trust company,

1

or similar institution which has at all times aggregate capital, surplus, and undivided profits of not less than the equivalent of Five Hundred Thousand Dollars ($500,000.00) and which is legally qualified to accept custody of securities;

Many insurance companies are members of their regional Federal Home Loan Bank and put up assets as collateral for loans. Most of them buy additional fixed income assets, some use the funds to purchase or expand their home office, but all use the money to buy assets of some kind. Payment of the purchase price out of the entity purchased does not create a new asset, which creates a whole in the balance sheet. Also most $80 million insurance companies have about $10 million or less in surplus (equity).

I expressed my reservations to Allen Reichman. He expressed concern and promised not to do anything illegal or that would create unnecessary exposure to Oppenheimer. I instructed Allen to call Dennis McNamara and/or his own compliance officer and he agreed.

Please call me if you have any questions. I may be missing the boat here, because I do not have all the facts. I do not want to screw this deal up if I am wrong and I do not want to burn any bridges with the FA network.

John C. Saf
SVP - Portfolio Manager
Oppenheimer Investment Management LLC



This communication and any attached files may contain information that is confidential or privileged. If this communication has been received in error, please delete or destroy it immediately. Please go to www.opco.com/EmailDisclosures for important information and further disclosures pertaining to this transmission.

CONFIDENTIAL

OP0000564

SR-0015329